HENRY JOHNSON, IMPLEADED, ETC.,

V.

CHARLES M. WORTHINGTON, EXECUTOR.

*Fraudulent Conveyances—Evidence—Parties—*Lis Pendens.

1. One of the two judgment debtors need not be made a party to proceedings to remove an alleged fraudulent conveyance of property of the other out of the way of the execution.

2. No one can make himself a necessary party to a litigation by purchasing an interest in its subject-matter while it is pending.

3. Mere sworn declarations that a transaction was honest are but conclusions, which can not prevail where the existing facts point satisfactorily to a contrary conclusion.

4. While fraud is never presumed, it may be proven by circumstances and facts which are inconsistent with an honest purpose.

[Opinion filed May 25, 1889.]

APPEAL from the Circuit Court of Whiteside County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Mr. J. E. McPHERRAN, for appellant.

As to the general legal principles applicable to a case like the one at bar, there is no need of having any controversy. There are two grounds only upon which this conveyance can be successfully assailed by the appellee. It must be made to appear that it was entered into, *in limine,* by the parties to the transaction with a fraudulent intent; or it must be made to appear that the nature and terms of the transaction itself are such as are deemed fraudulent as a mere inference of law, without regard to the actual motives of the contracting parties. In the one case the fraudulent intent of both parties to the conveyance is a question of fact and must be shown by extrinsic evidence; in the other, the conveyance, under the circumstances, must be made to appear fraudulent, although the parties to it may have acted in good faith. This question of fraud must be proven like any other fact which it is necessary to establish to entitle a recovery. Even if it should be inferred from the evidence that Jacobs made a conveyance of the land to defeat the collection of appellee's claim, still the conveyance can not be attacked, unless the evidence conclusively shows that appellant actually participated, at the very time of the making of the conveyance, in that act, or had knowledge of the corrupt purpose of Jacobs in that regard. Both parties must be shown by proof to have participated in the fraud actively or constructively. The evidence establishing the participation of appellant must be clear and convincing; it must not be presumed. Hatch v. Jordan, 74 Ill. 414; Miller v. Kirby, 74 Ill. 242; Hanchett v. Kimbark, 118 Ill. 122; Wood v. Clark, 121 Ill. 360.

The fact that Jacobs was insolvent would not of itself deprive him of the power of selling his property, although the sale might hinder and delay his creditors. It is an every-day occurrence in business circles that parties who are embarrassed, or even insolvent, without legal question, sell and convey their property, which, if held for a while longer, would have

been levied on. There is no law that prevents a man from selling his property for a fair price to pay an honest debt, though he may by such act delay some other creditor. Good faith only is required on his part in the sale of his property; the transaction must be fair. A debtor may prefer one creditor to another, or secure a surety who is liable for him in preference to paying other creditors; if he does this in good faith the law will protect his act. Waddams v. Humphrey, 22 Ill. 661; Nelson v. Smith, 28 Ill. 495; Wood v. Shaw, 29 Ill. 44; Bowden v. Bowden, 75 Ill. 143; Welsch v. Werschem, 92 Ill. 115; Tomlinson v. Mathew, 99 Ill. 178; Goemble v. Arnett, 100 Ill. 34; Wood v. Clark, 121 Ill. 359; Frank v. King, 121 Ill. 250.

Messrs. J. & J. DINSMOOR, for appellee.

C. B. SMITH, J. This is a bill in chancery to remove an alleged fraudulent conveyance out of the way of an execution. It appears from the record that prior to May 2, 1885, for over twenty-five years, Johnson Jacobs and his wife, Elizabeth, owned and resided on the N. E. ¼, Sec. 36, T. 22, R. 6. Prior to this date Johnson Jacobs had become largely indebted to various persons and in various ways. Aside from unsecured debt there were mortgages on the land above described amounting to $5,200. Among other unsecured debts was one of $500 for borrowed money from William C. Page, borrowed on January 25, 1884, due in one year, and which, not being paid at maturity, was put in judgment June 10, 1885. Certain other debts against Johnson Jacobs and his wife, amounting to $435.35, were put in judgment on the 11th of June, 1885, in favor of other persons, before a justice, and transcripts filed in the Circuit Court. On May 2, 1885, before any of these judgments were obtained but after the debt accrued, Johnson Jacobs and his wife executed and delivered a deed of the land above described to one Henry Johnson, a step-son of Johnson Jacobs and a son of Elizabeth Jacobs, for the expressed consideration of $12,000 as named in the deed. The deed was made subject to the

$5,200 mortgage, and Henry Johnson assumed the payment
of the mortgage as a part of the purchase money, and on the
same day executed six promissory notes for the remaining
$6,800 of the purchase money, running from one to six years,
as follows: $1,000 one year, $300 in two years, $1,000 in three
years, $1,000 in four years, $1,500 in five years and $2,000 in six
years, all at seven per cent. interest per annum.    These notes
were all secured by a mortgage back to Johnson Jacobs on
the land conveyed in the deed; not a dollar of money was paid
down.    On the same day of the execution of the deed, mort-
gage and notes, Henry Johnson, the purchaser, made a lease
for two years for the same land back to his step-father, John-
son Jacobs, and for the rental Jacobs was to pay the amount
of interest on the $5,200 mortgage, and was to, and did release
Henry Johnson from paying any interest on his six notes for
$6,800 for two years.    There was no possession of the land
taken by Henry Johnson.    Johnson Jacobs has resided on the
land ever since, and still occupies it with perhaps an excep-
tion of `a short time when he moved into town, but again
moved back on the farm and now occupies it with his daugh-
ter and son-in-law, Henry Juilfs.

The bill charges that the sale of this land to Henry John-
son was fraudulent and void as to creditors, and that it was
made to hinder and delay complainant in the collection of his
debt, and that the whole transaction was merely a trick to
cover up and so becloud the title as to prevent complainant
from levying his execution and making the amount of his
judgment, and prays that the deed may be held fraudulent
and void and set aside as to complainant.    Answer under
oath was waived; Johnson and Elizabeth Jacobs answer the
bill and deny all fraud, and aver the transaction was *bona fide*
and for a valuable consideration.    The answer of Henry John-
son also denies all fraud and asserts that the purchase as to
him was in good faith and for a valuable consideration; that
he knew nothing of the indebtedness to Page; that at the
time of the purchase Johnson Jacobs was indebted to him in
the sum of several hundred dollars for groceries; that at the
date of the sale he (Johnson) was liable as surety with said

Jacobs on several promissory notes, and that the owners of such notes desired him to assume and pay such notes as his own; that his then liability on such notes as security was $2,500, and that it was agreed at the time of the sale that such indebtedness, as soon as ascertained, should be credited on such notes first falling due. He alleges the first three notes executed by him have been fully paid. Replication was filed and the cause tried on the proofs taken, and a decree rendered in accordance with the prayer of the bill. Henry Johnson brings the record here on appeal, and asks for a reversal of the decree, and assigns for error that the evidence does not support the finding of the court below.

A preliminary question is made on the want of proper parties to the bill. It appears from the record that complainant's judgment was against Johnson Jacobs and George Jacobs. Appellant insists that George Jacobs was a necessary party. We do not think so. Execution was issued against both, and returned, no property found out of which to make the execution, but aside from this we think inasmuch as the sole purpose of this bill was to remove the deed in question out of the way of the execution, it was not necessary to make George Jacobs a party, since it does not appear that he had anything to do with the transfer. Complainant had a legal right to proceed and collect his judgment out of either one of the judgment debtors. It also appears from the evidence that Henry Juilfs, prior to the conveyance in question, held notes against Johnson Jacobs for about $2,500 without security, for money loaned to him, and after the deed in question was made to Henry Johnson, and the note and mortgage executed by Johnson back to Jacobs, and after this suit was brought and pending, that Juilfs surrendered his unsecured note to Jacobs, and received in exchange a like amount of notes which had been executed by Henry Johnson to Jacobs, as a part payment of the land, and that said notes are still unpaid and being secured by the mortgage. It is now contended by appellant that Henry Juilfs, being interested in the subject-matter of the suit, was also a necessary party defendant, and that it was error to proceed without him. We think there is no merit in this objec-

tion. Juilfs bought these notes after this suit was brought directly affecting the title to the land in which he now claims an interest to the extent of his security. It is a familiar rule of law that no person can buy into a lawsuit or buy an interest in the subject-matter of litigation while the suit is pending and thereby make himself a necessary party to the suit. We think, therefore, that neither George Jacobs nor Henry Juilfs were necessary parties.

On the merits of the case, counsel for appellant strongly insist that this transaction was not fraudulent and that a full and fair consideration was given for the land. All the defendants swear that no fraud was intended, and that, in fact, none existed. Henry Johnson swears that about $4,000 of these notes have been paid by him and surrendered by the application of credits for debts due him from Johnson Jacobs existing before and at the time of the conveyance, and that upon settlements had since the execution of the $6,800 notes it was ascertained that on account of various liabilities he had assumed for Jacobs, and on account of grocery bills due him from Jacobs, that about $4,000 of these notes were paid and should be given up.

We have studied this record attentively and carefully, and are forced to the conclusion that the Circuit Court found correctly, and that this sale was fraudulent and void as to the complainant, and we also think that both grantor and grantee were equally involved in the fraudulent purpose. It would make this opinion too long and serve no useful purpose for us to enter upon a general review of the evidence, and we shall curtail ourselves with a brief reference to some of the prominent and undisputed features of the case in support of our judgment. The record shows that Johnson Jacobs was an old man, deeply involved in debt, constantly borrowing money and becoming more involved with each succeeding year, and without any reasonable hope of paying his debts. His stepson, Henry Johnson, was familiar with his financial embarrassments, for he says he was upon many notes as his security, and claims to have paid them or assumed them as his own debts. We think it clear that Johnson Jacobs was insolvent at the

time this deed was made, and that Henry Johnson knew it. On the other hand, the proof is equally clear that Henry Johnson was a man of very limited means and wholly unable to buy a $12,000 farm. He himself testified he had no money in bank, and that his property consisted of a stock of groceries and some book accounts and his claims against Johnson Jacobs for groceries, which turned out in the case to be worth less than $200. He was not a farmer and had no intention of becoming one. He never took possession nor asked for possession of this farm, and though being within seven miles of it, very seldom went near it. He never paid a dollar in cash directly on its purchase, and, as far as appears from the evidence, was never asked for a dollar by Jacobs. When he leased it back to Jacobs he never received a dollar directly in cash for rent from Jacobs, but Jacobs simply went on and paid the interest as usual on the $5,200 notes and mortgages, and the interest on Henry Johnson's note was canceled, and by this circuitous route it is insisted that Jacobs was paying Johnson's rent, when, in fact, Johnson gave nothing but a note and mortgage and received nothing back for rent off this valuable farm. Everything was done by indirection. No one received any money, no one paid any money, and we think it clear that none of the parties to the transaction ever intended to pay or secure any money as the result of the transfer. How unreasonable and extremely improbable that this old man, the owner of a $12,000 farm, involved in and harassed by debt, should sell his farm without receiving a dollar in cash and accept the entire consideration in notes, secured by a second mortgage running a long time, and to a man unable to pay the one-fourth of the purchase price, and without any adequate means of raising money to pay the debt. Such a transaction argues insanity or a fraudulent purpose. Again, the evidence is uncontradicted that the consideration named in the deed was fully $1,600 more than the land was worth. This fact alone furnishes strong evidence that Henry Johnson did not regard it very important as to what consideration was named in the deed, or what amount he would secure by his worthless promissory note, which he never expected to

pay. Again, if indeed Johnson Jacobs owed Henry Johnson $3,000 or $4,000 or any other amount at the time this deed was made, which was in good faith to be applied as a payment on the land, why was not the amount then ascertained and a balance struck, and the note and mortgage given for the real and correct amount due, instead of doubling, or nearly so, the amount in fact due by fictitious notes? It is argued in excuse and explanation of this that the parties were all ignorant and some of them not able to speak English or even to read their own language (being all Germans). But we regard this excuse insufficient, certainly so far as Henry Johnson was concerned. He was a merchant, selling groceries, and knew the effect of giving promissory notes, and a'so certainly not ignorant of the importance of having himself allowed all just credits honestly and fairly due him. There was every reason of prudence and honesty to forbid so reckless a transaction. The testimony of appellant as to the fairness of the transaction is directly impeached by the testimony of the deputy sheriff, George C. Keefer, who swears that appellant told him that he and Jacobs had now got things fixed so that appellee could not collect this debt, and that he and Jacobs would pay when they got things arranged.

George C. Keefer was a disinterested witness and is entitled to more credit than appellant, and his testimony goes a great way in corroboration of the circumstances tending to impeach the good faith of this transaction. The transaction is further tainted with the admitted fact that Johnson Jacobs accepted in part payment for his farm the sum of $2,000, which appellant claims to be due him from Jacobs, and which was never secured from th estate of appellant's father by Johnson Jacobs, and which was used in raising appellant.

The claim was very old and stale, and was outlawed under the statute of limitations, and could not have been enforced against Johnson Jacobs; and yet, in his embarrassment, he is induced, so appellant swears, to allow this $2,000 to be a charge against him in the sale of his farm. This transaction seems very unreasonable to us, and we think is a mere excuse and pretext to show a consideration for the sale to Johnson.

None of the foregoing facts are contradicted in the evidence, and they seem to us to lead irresistibly to but one conclusion, and that is that the purpose of both seller and buyer was to hinder and delay complainant in the collection of his just debt. While fraud is never presumed, and must always be proven by fair and satisfactory evidence, still it may and generally must be proven by circumstances and facts which are inconsistent with an honest purpose. Mere sworn declarations that a transaction was and is honest are but conclusions of the witness or party, and can not prevail where the existing facts point satisfactorily to a contrary conclusion.

The legal propositions we have herein stated are so familiar that we have not regarded it necessary to cite authority in support of them. Finding no error in the record, the decree of the Circuit Court is affirmed.

*Decree affirmed.*